# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# GAINESVILLE DIVISION

**KIMBERLY COX,**

    **Plaintiff,**

**vs.**                                                         **CASE NO. 1:07CV236-MP/AK**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) and for supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are **not** supported by substantial evidence; thus, the decision of the Commissioner should be reversed and this cause remanded for further proceedings.

**A.**     **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on July 25, 2003, alleging a disability onset date of May 15, 1998, because of back pain, bipolar disorder, and diabetes. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who

conducted a hearing on January 19, 2006, and entered a partially favorable decision on July 12, 2006, which he then amended to a wholly unfavorable decision on December 13, 2006. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

**B.      FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had a closed period of disability from May 15, 1998, through February 8, 2001, but because Plaintiff filed her application on July 25, 2003, more than 12 months after the disability ended, she was precluded from benefits pursuant to 20 CFR 404.320.

Plaintiff's date last insured (DLI) is December 31, 2003, so she must be found disabled prior to the date her disability benefits ended.

Plaintiff was injured in a fall at work as a restaurant general manager on April 10, 1998, for which she received a workers compensation award of $190,000.00. She had several surgeries and other treatment for her lumbar pain, which the ALJ found successfully alleviated her symptoms such that by February 8, 2001, she had significantly improved and had regained the functional capacity to perform a wide range of sedentary work and by April 15, 2002, she was capable of light work.

**C.      ISSUES PRESENTED**

Plaintiff argues that the ALJ had no medical basis for finding that Plaintiff had medically improved beginning February 4, 2001, when she was hospitalized on this date and her mental condition deteriorated after this date.

The government responds that the medical evidence of the hospitalization on February 4, 2001, (R. 276-89, 294-96) supports the ALJ's finding of improvement

**No. 1:07CV236-MP/AK**

because all the objective tests taken at that time were normal, and her mental status exam showed that she had been completely off medication for anxiety and depression for two years and was feeling much better by her own report. Follow up treatment notes indicate that she was ready for light work activities as of April 15, 2002. (R. 254).

D.  **STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d

**No. 1:07CV236-MP/AK**

227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairment?
3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?
4. Does the individual have any impairments which prevent past relevant work?

**No. 1:07CV236-MP/AK**

5.   Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E.   **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff picked up a 5 gallon bucket at work and experienced sharp pain, which was shown on MRI to be significant damage, including a congenital defect, (doc. 211-212), and which was treated extensively by two surgeries in 1998 and 2000, epidural injections, and radio frequency denervation.

Medical records around the time of "medical improvement," and the pivotal time frame for the decision under review, shows that on January 23, 2001, Plaintiff received a third epidural block after reporting good results with the previous blocks.  (R. 262).

**No. 1:07CV236-MP/AK**

Plaintiff was admitted to the hospital on February 4, 2001, with a sudden onset of chest pain. (R. 276). She apparently had some issue with her doctor resulting in a psychiatric consultation and the psychiatrist concluded that her anxiety and upset was primarily the result of back pain, but that a small dose of antidepressant would be administered. Plaintiff told him she had taken no medication for the last two years with a good result. She had been having increased back pain, but reported to him that she was able to deal with it. (R. 276-296).

Her heart, chest and brain were studied to determine the etiology of her chest pain and headaches, but the tests were normal.

There was only a cursory examination of her back done at this time and there were no studies or other tests done for her back such as x-ray or MRI.

However, she had worsening back pain and received another block on August 14, 2001, after which she again experienced chest pain and was treated with nitroglycerin and an EKG was normal. (R. 257-259). In October 16, 2001, she reported excellent relief of several weeks duration following the August block and her doctor performed "radio frequency denervation" hoping for an even longer period of decreased pain. (R. 255-256). This was repeated on August 20, 2002, after her symptoms began to worsen which the doctor concluded was because the denervation had begun to wear off. (R. 251-252).

The follow up treatment note for April 15, 2002, referred to in Defendant's brief, was actually an emergency room visit following a fall at home and did not suggest that

**No. 1:07CV236-MP/AK**

she could return to light *work* activities, it suggested that she continue on her current medications (which included OxyContin, Roxidodone, Effexor, Clonazepam, and Zanaflex), with the single notation, "Light activities." (R. 253-254).

A consultative examination of October 27, 2003, by Dr. Nazario, deferred to medical doctors to make an assessment as to her medical condition. His mental evaluation was a diagnosis of bipolar disorder, consistent with her symptomology. He found her capable of interacting with others appropriately, able to concentrate, and understand and follow directions. (R. 297-301).

A consultative examination on October 31, 2003, by Dr. Lance Chodosh, found her to be able to walk to a moderate degree, but "not very extensively," and able to stand and sit normally, bend at the waist occasionally, to lift and carry 15 to 20 pounds, unable to squat, kneel or crawl. (R. 297-305). His range of motion tests were normal. (R. 306-307).

Medical records in 2005, after her date last insured (DLI), reflect continuing problems with bipolar disorder and back pain, with additional issues related to diabetes. (R. 352-357, 378-381).

**F.**     **SUMMARY OF THE ADMINISTRATIVE HEARING (held on January 19, 2006)**

Plaintiff discusses her injury for which she received workers compensation of $200,000.00, less her attorneys' fee, and which was to cover future medical costs. She is now being treated as an indigent by Shands Hospital for her back pain and bipolar disorder. Her pain is a 7 on a scale from 1 to 10 on "a good day," but it is an 8

**No. 1:07CV236-MP/AK**

chronically. About 3 years ago, her worst pain was about a 6. She takes Lortab for pain presently. Her days are spent watching television, doing some light housekeeping and cooking. She is also diabetic and takes pills every day, and has been told she has kidney damage.

Her mother and uncle attended the hearing with her and spoke on her behalf. Her uncle had reviewed her file extensively and was concerned that medical records were missing.

### G.   DISCUSSION

Medical improvement is defined as "any decrease in the medical severity of the claimant's impairment(s) which was present at the time of the most recent favorable medical decision...and must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." 20 CFR §404.1594(b)(1). The evidentiary standard is "such relevant evidence as a reasonable mind might accept" and " more than a scintilla, but less than a preponderance." See citations above.

Applying these definitions and standards to the decision that Plaintiff had medically improved by February 4, 2001, the undersigned finds **no** evidence to support this conclusion. Plaintiff had received an epidural block for back pain within two weeks of being treated on February 4, 2001, for chest pain. It is, therefore, understandable that she would not report significant back pain during this examination. Further, she was in the hospital for chest pain and the medical team was focusing on her heart in an

**No. 1:07CV236-MP/AK**

attempt to rule out heart attack. The objectives tests undertaken at that time were of her heart and brain to determine an etiology for chest pain and headaches. There was only a cursory examination of her back done at this time, and no laboratory tests or other objective findings were made concerning her back.

The psychiatric examination conducted at the same time provides some insight into her mental condition, but her response that she was "feeling much better" was, in the opinion of the undersigned, related to her bipolar and depression, not her back condition. She was, after all, being examined by a psychiatrist. When she said she was off all her medications for the last two years, again, the undersigned reads this to mean her anti-depressant medications, not her pain medications. In short, the medical records of this hospital admission are not substantial evidence of a change in her back condition nor is any "improvement" supported by laboratory signs or testing of her back and the ALJ's finding of disability is based on her back condition. (See R. 17).

Within a few months of this hospital admission, she received another epidural block and began radio frequency denervation procedures in an effort to manage her pain more effectively and for longer periods of time. This contradicts the ALJ's finding that "[t]here is a significant gap in the medical evidence from February 8, 2001 until April 15, 2002, at which time, the claimant is restricted to light exertional activities." (R. 19). She received a block in August 2001 and began the denervation procedures in October 2001. It was anticipated and hoped that she would not need additional treatment for

**No. 1:07CV236-MP/AK**

several weeks after these procedures, so it is not a "gap" reflective of a lack of need for care, but the expected result of a successful, but invasive procedure.

Finally, the ALJ's reliance on the medical record of April 15, 2002, as further support for a finding of improvement, is also misplaced. First, this record is not a follow up treatment note from her treating physician, it was an emergency room visit following a fall at home. In this context, it should not carry the same weight as a treating physician's opinion. More importantly, it was not suggested by the ER physicians that she could return to light *work* activities, and the single notation of "light activities" should not be considered an assessment of her functional capacity given the context in which it was made.

To summarize, the undersigned finds no support for medical improvement on the date selected by the ALJ. The consultative examinations in October 2003 *suggest* improvement, but it is not clear what treating physician's records may show about her condition at this time since there was some discussion at the hearing that not all of her records were included. (See R. 424-425). For arguments sake, even if there was medical improvement as of October 2003, such a finding would not preclude a closed period of disability since the time parameters (application filed 12 months *after* the month in which your disability ended) set forth in 20 CFR 404.320 are no longer applicable. (She filed her application on July 25, 2003).

However, there is no medical evidence in the record supporting when disability ceased, if in fact it did. If the ALJ finds that disability ceased in October 2003, then

**No. 1:07CV236-MP/AK**

based on his previous findings, as amended, Plaintiff would be entitled to a closed period of disability from May 15, 1998, through October 2003, and she should be awarded these back benefits. However, if there is evidence that her disability ceased over 12 months prior to July 25, 2003, she is again precluded from receiving a closed period of disability pursuant to 20 CFR §404.320. These finer points of her eligibility should be left to the Administration to determine upon remand.

It is respectfully **RECOMMENDED** that the decision of the Commissioner be **REVERSED**, and this cause be **REMANDED** for further proceedings.

**IN CHAMBERS** at Gainesville, Florida, this 4th day of August, 2009.

s/ A Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**
,

**No. 1:07CV236-MP/AK**